IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:14-CV-34-FL

| THOMAS EVERETTE, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE VANN WHITE, in his individual | ) | |
| and official capacity, WHITE'S | ) | MEMORANDUM AND |
| WRECKING SERVICE, INC., | ) | RECOMMENDATION |
| WILLIAM ANTHONY BARNES, in his | ) | |
| individual and official capacity, | ) | |
| PRINCEVILLE POLICE DEPARTMENT, | ) | |
| TOWN OF PRINCEVILLE, DIANA LEE | ) | |
| DRAUGHN, in her individual capacity, | ) | |
| and DONYELL WEAVER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following motions: (1) a motion to dismiss or, alternatively, a motion for a more definite statement by Defendants Jesse Vann White and White's Wrecking Service, Inc., [DE-43], (2) a motion to dismiss by Defendants Princeville Police Department, Town of Princeville and William Anthony Barnes, in his official capacity, [DE-59], and (3) a motion to dismiss by Defendant Donyell Weaver [DE-65]. Plaintiff Thomas Everette, Jr., has responded to the motions [DE-62, -69 and -74] and the matters raised therein are ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motions are considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); Local Civil Rule 72.3(c). For the reasons set forth below, this court recommends allowing Defendants' motions to dismiss and that Plaintiffs' claims against the moving Defendants be dismissed.

## BACKGROUND

Plaintiff Thomas Everette, Jr. ("Plaintiff"), an inmate at Hyde Correctional Institution, commenced this action by filing a complaint on March 3, 2014. [DE-1]. The complaint survived review pursuant to 28 U.S.C. § 1915(e)(2) and was not dismissed as frivolous. [DE-5]. Thereafter, Plaintiff was permitted to amend his complaint. [DE-8]. On April 29, 2014, Plaintiff timely filed an amended complaint purportedly containing allegations of violations of the United States and North Carolina constitutions. [DE-24]. According to the complaint, on or around July 4, 2012, Defendant White, owner and operator of White Wrecking Service towed Plaintiff's 2003 BMW ("Vehicle"). The Vehicle had been driven by Brian L. Perry ("Perry") with Plaintiff's consent and was towed by order of the Tarboro Police Department because Perry "went thru a road block and didn't have proof of insurance." *Id.* at 3. After the Vehicle was towed to White's Wrecking Service and was in its possession, White made no attempt to notify Plaintiff of the Vehicle and failed to notify the North Carolina Department of Motor Vehicles ("DMV") within five days as required. Plaintiff alleges further that on or about September 26, 2012, White sold the Vehicle to Defendant Barnes, an officer of the Princeville Police Department, for $3800 without Plaintiff's permission with the intent to permanently deprive Plaintiff of his property. Plaintiff alleges that the sale was made without the authorization of the Edgecombe County Clerk of Superior Court and in violation DMV procedures and the Constitution of North Carolina and the United States. *Id.* at 3-4.

According to Plaintiff, on or about October 23, 2012 through November 5, 2012, Defendant Barnes "unlawfully and feloniously did knowingly and designedly with the intent to cheat and defraud obtain and forged" a North Carolina Certificate of Title for Plaintiff's Vehicle

2

from the "DMV/LPA by means of a false pretense which [was] calculated to deceive and did deceive." *Id.* at 4. Plaintiff alleges further that Defendant "Barnes knowingly submitted a forged and notarized MVR-4 (Title Application) apply and complete [sic] the registration process to re-title [Plaintiff's] BMW to himself to permanetly [sic] deprive [Plaintiff] of the use, possession and enjoyment of said property." *Id.* According to Plaintiff, while in the possession of either White or Barnes the Vehicle was damaged in further violation of his constitutional rights when sugar, oil and water were placed in the gas tank and engine. *Id.*

On or about October 23, 2012, Defendant Draughn conspired with Defendant Barnes "who act[ed] under color of law." *Id.* Defendant Draughn "unlawfully and willfully notarize[d] an MVR-4 (Title Application) for Barnes without having witnessed [Plaintiff's] signature." *Id.* According to Plaintiff, Draughn conspired with Barnes to commit felony title fraud against Plaintiff. Barnes used his position and authority towards Draughn to permanently deprive Plaintiff of the use, possession and enjoyment of his Vehicle in violation of the North Carolina and United States Constitutions. On or about September 26, 2012, "or before Donyell Weaver conspired with 'Barnes' by concealment or nondisclosure of [sic] serious crime, by one who did not participate in the crime but as 'Weaver' being a Deputy Sheriff who knew what was going on and fail [sic] to report or file a Complaint to pervent [sic] [Plaintiff] from being deprive[d] of the use, possession and enjoyment of his property in violation of the North Carolina and United States constitution[s]." *Id.* Among other relief, Plaintiff seeks compensatory damages jointly and severally against each defendant in the amount of $75,000, and punitive damages in the amount of $150,000 against all defendants. *Id.* at 5.

Defendants have sought dismissal of the complaint in accordance with Fed. R. Civ. P.

3

12(b)(6). The entry of a scheduling order has been stayed pending the resolution of the pending motions. [DE-71].

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678)). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.* In the present case, Plaintiff is proceeding *pro se* and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). This court is charged with liberally construing pleadings filed by a *pro se* litigant to

4

allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## DISCUSSION

Plaintiff has claimed that his rights under the and United States and North Carolina constitutions were violated as a result of his Vehicle being towed, damaged and sold without his permission. Although Plaintiff fails to identify the nature of these rights, the court liberally construes Plaintiff's claims as purportedly asserting causes of action arising under the Fourteenth Amendment to the United States Constitution. *See e.g., Stypmann v. City and Cnty. of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977) (holding the loss of the use of a private car deprives the owner of a property interest that may be taken only in accordance with the Due Process Clause of the Fourteenth Amendment). Plaintiff's claims therefore implicate 42 U.S.C. § 1983.

Section 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, section 1983 is not a "source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citations omitted). Thus, to state a claim under § 1983, a plaintiff must allege facts indicating a deprivation of rights guaranteed by the Constitution and laws of the United States and that this

5

deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 49-50 (1988); *see Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Section 1983 "excludes from its reach merely private conduct, no matter how ... wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation omitted); *see Armstrong v. Medlin Motors, Inc.*, No. 5:12-CV-00806-FL, 2013 WL 1912590, at *2 (E.D.N.C. Apr. 15, 2013) ("Although Plaintiff asserts that '[t]he conduct complained of was engaged in under color of state law,' . . . he alleges no facts demonstrating any delegation of state authority to Defendants or other relationship between Defendants and the state as to render Defendants state actors for purposes of § 1983 liability"), *report and recommendation adopted*, 2013 WL 1932233 (E.D.N.C. May 8, 2013) *Rodgers v. Waste Indus., Inc.*, No. 4:12-CV-294-FL, 2013 WL 4460265, at *4 (E.D.N.C. Aug. 19, 2013) (explaining that private action may be found to constitute state action "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by he state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.") (quoting *Andrews v. Fed. Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993)), *aff'd*, 553 F. App'x 332 (4th Cir. 2014). Such a limitation preserves an area of individual freedom by recognizing "that most rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (quotations omitted). Sometimes a private party's actions may be deemed "state action," but only when "the state has so dominated such activity as to convert it to state action." *Philips*, 572 F.3d at 181.

"Mere approval of or acquiescence in the initiatives of a private party is insufficient." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (quotations omitted).

    A.    Defendants Jesse Vann White and White's Wrecking Service. Inc.[1]

In his amended complaint, Plaintiff alleges White towed his vehicle "by order of [the] Tarboro Police Department." [DE-24] at 3. Arguably, this allegation sufficiently states that White was acting under color of state law at the time it towed the vehicle because the action alleged was performed at the direction of the state. *See Huemmer v. Mayor and City Council of Ocean City*, 632 F.2d 371, 372 (4th Cir. 1980) (noting that a towing operator was acting under color of state law when towing a vehicle at the direction of the police); *Watters v. Parrish*, 402 F. Supp. 696, 700 (W. D. Va. 1975) (finding allegations that a private towing company which had towed automobiles at direction of the police were sufficient to allege actions taken under color of state law). The seizure of the vehicle itself however, does not define whether the actions complained of here were constitutionally violative, and this court must instead analyze the precise nature of Plaintiff's claim. *See Watters*, 406 F. Supp. at 700 (distinguishing defendant's act of towing under color of state law from the remainder of plaintiffs' allegations and holding that "in assessing liability under section 1983 'it is necessary to keep in mind the precise nature of plaintiffs' cause of action under 1983.'"); *see, e.g., Dopp v. Loring*, 245 F. App'x. 842, 845-47 (10th Cir. Aug. 30, 2007) (although towing company was acting for state when it initially towed car, towing company's subsequent sale of the truck was not state action and Plaintiff could therefore not assert a due process claim under § 1983).

---

[1]Plaintiff does not distinguish these Defendants from one another in his material allegations. For its discussion of these claims it is sufficient for the court to refer to them altogether simply as "White."

7

Here, Plaintiff's cause of action against Defendant White rests not on the seizure of Plaintiff's Vehicle, but rather on its sale, which Plaintiff attributes to White. In particular, Plaintiff alleges that he was deprived of his constitutional rights "[a]fter the 'BMW' was towed to Storage at White's Wrecking Service and was in possession [of] White." [DE-24] at 3 (emphasis added). Plaintiff alleges further that White, "made no attempt to try to notify the owner of the vehicle" and "fail[ed] to file notice of storage with [the] DMV for the 'BMW' within the 5 day statutory time period;" sold the BMW, "without [Plaintiff's] authorization;" and failed to "follow[] the required complete procedure set fouth [sic] by the Commissioner of [t]he North Carolina Division of Motor Vehicles and [t]he Clerk of Edgecombe County Superior Court for authorization of sale of all towed motor vehicles . . . ." *Id.*

Plaintiff's allegations fail to state a claim that White's actions after towing were taken under the color of state law. The amended complaint fails to allege facts suggesting that in taking these subsequent actions White "acted together with or . . . obtained sufficient aid from state officials or engaged in conduct otherwise chargeable to the state." *Wyatt v. Cole*, 504 U.S. 158, 162 (1992); *cf Coleman v. Turpen*, 697 F.2d 1341, 1344-45 (10th Cir. 1982) (finding towing company to be a state actor where sheriff had hired towing company to tow and store a vehicle, thereby incurring a storage bill to sheriff and sheriff allowed the sale of vehicle to satisfy its bill); *compare Dopp*, 245 F. App'x at 845-47 (towing company's subsequent sale of the truck was not state action and Plaintiff could therefore not assert a due process claim under § 1983 where no state official assisted, encouraged or authorized the sale) (distinguishing *Coleman*). Plaintiff has alleged no facts suggesting the state encouraged, aided or compelled White to sell the vehicle, that the state directed White to hold the Vehicle on its behalf, or that the sale was made to satisfy

8

an interest in the Vehicle held by the state. Rather, it appears from the allegations that White acted independently of the state in its treatment and ultimate sale of the Vehicle after towing.

Plaintiff's allegations further suggest that White was not acting under color of state law. According to the amended complaint, White violated state law when it failed to provide required notice and follow procedures. By definition, then, White was not acting under color of state law. *See Lugar*, 457 U.S. at 941 (the "private misuse of a state statute does not describe conduct that can be attributed to the State."); *Roemer v. Security Bancshares, Inc.*, 978 F. Supp. 988, 991 (D. Kan. 1997) ("Private misuse of state procedures or violations of state law does not amount to state action.") (citing *Cobb. v. Saturn Land Co., Inc.*, 966 F.2d 1334, 1336 (10th Cir. 1992)). Accordingly, it is recommended that Plaintiff's federal constitutional claims against the White Defendants be dismissed.

B.   Municipal Liability

Although the Princeville Police Department ("the PPD") is a named Defendant to this action, the sole allegation against the PPD is Plaintiff's assertion that Defendant Barnes was a member of the PPD acting in his official capacity. The PPD contends that it is an entity not capable of being sued. In the federal courts, the capacity of a governmental body to be sued is governed by the law of the state in which the district court sits. Fed. R. Civ. P. 17(b); *Avery v. Burke Cnty.*, 660 F.2d 111, 113-14 (4th Cir. 1981). "Absent specific statutory authority, only persons in being may be sued in North Carolina." *Davis v. Matroo,* No. 5:13-CV-00233-BO, 2013 WL 5309662, at *2 (E.D.N.C. Sept. 19, 2013) (citing *McPherson v. First Citizens Nat'l Bank,* 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954)). There is no such governing statute in North Carolina authorizing suit against a police department. *Coleman v. Cooper*, 89 N.C. App. 188,

9

192, 366 S.E.2d 2, 5 (1988). Thus, "[a] municipal police department is a component of the municipality, and, therefore, lacks the capacity to be sued." *Wright v. Town of Zebulon,* 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010); *see also Davis,* 2013 WL 5309662, at *2-3 (dismissing Raleigh Police Department as an entity not capable of being sued). Accordingly, it is recommended that the claims against the Princeville Police Department be dismissed.

        C.      Failure to State a *Monell* Claim

Although the Town of Princeville ("the Town") is a named Defendant to this action, the sole allegation against the town is Plaintiff's assertion that Defendant Barnes was a member of the PPD acting in his official capacity. The Town contends on a variety of grounds that Plaintiff has failed to allege sufficient facts to state a § 1983 claim. The Town specifically argues that Plaintiff's claims are based solely on a single incident and fail to identify any particular deficient policy or unlawful custom or explain how any particular policy failure caused a deprivation of Plaintiff's constitutional rights.

Assuming without deciding that Plaintiff has suffered a deprivation of his constitutional rights, the Town is only liable for injuries stemming from that deprivation under § 1983 "if it causes such a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Municipalities are not liable under § 1983 based on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). An official policy may arise from written ordinances and regulations, *Carter,* 163 F.3d at 218 (citing *Monell,* 436 U.S. at 690-91), affirmative decisions of policymaking individuals, *id.* (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84 (1986)), or omissions of policymakers manifesting "deliberate indifference to the rights of citizens," *id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 388-89 (1989)). An

10

official custom is said to exist where "a practice is 'so persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *Monell,* 436 U.S. at 691). The failure to train municipal personnel may rise to the level of an unconstitutional custom or policy, but only where there is a history of widespread abuse. *See Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir. 1983). However, a single act is "normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Id.* Allegations of mere negligence with regard to police training are insufficient to state a claim for municipal liability. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) ("Only those deficiencies in police training policies that result from policymaker fault of at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction can give rise to municipal liability[.]").

Plaintiff has made no factual allegations which include the Town. Rather, the sole connection to the Town is Barnes' alleged membership in the PPD. [DE-24] at 3. Moreover, Plaintiff has failed to specify a policy or custom or any affirmative decision of policymaking individuals that might serve as a basis for municipal liability. *See Evans v. Griess,* No. 7:13-CV-128-BO, 2013 WL 5817239, at *9 (E.D.N.C. Oct. 23, 2013) (dismissing § 1983 claim against the city where plaintiff's complaint focused "almost exclusively on the conduct of the police officers who searched and arrested Plaintiff" and failed to "reference a policy, a custom, an exercise of decision-making authority, or a practice on the part of the City of Jacksonville that colorably could have been the cause of his alleged constitutional injuries"). Accordingly, this court recommends that Plaintiff's federal constitutional claims against the Town be dismissed.

11

D.  Official Capacity Redundancy

Defendant Barnes has moved to dismiss the claims against him alleged in his official capacity only. An official capacity suit is "'another way of pleading an action against an entity of which an officer is an agent.'" *Moore v. City of Creedmoor,* 345 N.C. 356, 367, 481 S.E.2d. 14, 21 (1997) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). "Thus, where the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant." *Id.* "An action against officers in their official capacities is simply another way of bringing suit against a municipal employer." *Davis,* 2013 WL 5309662, at *5. The Fourth Circuit has held that official capacity claims are essentially the same as a claim against the entity and should be dismissed as duplicative when the entity is also named as a defendant. *See Love-Lane v. Martin,* 355 F.3d 766, 783 (4th Cir. 2004) (affirming a dismissal of an official capacity claim against the superintendent of a school board, holding that it is essentially a claim against the board, also a named party). Here, Plaintiff's claims against Barnes in his official capacity are duplicative of his claims against the Town because "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky,* 473 U.S. at 166; *see also Hatley v. Bowden,* No. 5:13-CV-765-FL, 2014 WL 860538, at *2 n.4 (E.D.N.C. Mar. 5, 2014) (dismissing claims against an officer in her official capacity because they are duplicative of the claims against the City of Raleigh). Accordingly, it is recommended that all claims against Officer Barnes in his official capacity be dismissed.

E.  Bystander Liability

According to the amended complaint, while Defendant Weaver did not participate in the

12

alleged crime of re-titling Plaintiff's Vehicle, as a deputy sheriff he knew "what was going on" and failed to report it or file a complaint. [DE-24] at 4. Defendant Weaver contends these allegations are insufficient to state a claim against him for failure to intervene. The Fourth Circuit addressed a failure to intervene claim as a theory of "bystander liability" in *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002). According to *Randall,* on a theory of bystander liability, an officer may be liable under § 1983 if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204. To satisfy the first prong of this test, a bystanding officer must "know of his fellow officer's misconduct." *Id.* at 204 n.24. If the bystander "lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible." *Id.* In this case, Plaintiff has failed to allege sufficient facts accepted as true to state a plausible claim of bystander liability. Plaintiff has failed to allege facts from which a reasonable inference may be drawn that Weaver was in a position to evaluate the correctness of Barnes' conduct. This claim is especially dubious where Barnes and Weaver are alleged to be members of separate jurisdictions of law enforcement. Additionally, Plaintiff fails to allege facts from which it may be inferred Weaver had specific knowledge of Barnes' alleged unconstitutional conduct and could have had a reasonable opportunity to prevent the alleged harm. *See Randall,* 302 F.3d at 204 ("[I]t is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence . . . .") (quoting *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir .1972)). Accordingly, it is recommended that Plaintiff's federal constitutional claims against Weaver be dismissed.

F.  Allegations of a Conspiracy under 42 U.S.C. § 1985

In further deprivation of his constitutional rights, Plaintiff alleges Barnes conspired with Draughn to commit title fraud and that Draughn unlawfully notarized a title application for Barnes without witnessing Plaintiff sign the application. Plaintiff alleges further that Barnes conspired with Weaver in concealing a "serious crime." [DE-24] at 4.

To the extent these claims may be construed as an attempt to assert a cause of action for conspiracy to infringe on Plaintiff's constitutional rights, such a claim would arise under 42 U.S.C. § 1985(3). *See Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009). In order to plead a violation of § 1985(3), a plaintiff must allege specific facts that the defendants were motivated by a class-based, invidiously discriminatory animus to deprive the plaintiff of the equal enjoyment of rights secured by the law to all. *Id.*; *see Watters*, 402 F. Supp. at 701 (noting § 1985 applies only to denial of equal protection not due process). Moreover, "[c]onclusory allegations of conspiracy, in the absence of concrete supporting fats, are insufficient to state a claim." *Mauney v. Cricket/Bojangles Coliseum*, No. 3:11-CV-215-RJC-DCK, 2012 WL 5985497, at *7 (W.D.N.C. Oct. 3, 2012) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Plaintiff has failed to support with factual allegations his conspiracy claim that the persons of the alleged conspiracy were motivated by a specific class-based invidiously discriminatory animus. Accordingly, to the extent these claims may be construed as a claim for conspiracy under § 1985(3) it is recommended that such claim be dismissed.

G.  Plaintiff's Claims under the North Carolina Constitution

Plaintiff asserts that each of the Defendant's conduct violates the North Carolina Constitution. A plaintiff may assert a direct claim under the North Carolina Constitution only

14

when there is no adequate remedy at common law or under a state statute. *See Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992); *Craig v. New Hanover Cnty. Bd. of Educ.*, 185 N.C. App. 651, 655, 648 S.E.2d 923, 925 (2007), *rev'd on other grounds*, 363 N.C. 334, 678 S.E.2d 351 (2009). The "adequate remedy" means an "available, existing, applicable remedy." *Craig*, 185 N.C. App. at 656, 648 S.E.2d at 927. The adequate state remedy need not be "potentially successful," only "available." *Id.* Plaintiff seeks damages against each Defendant related to the taking of his Vehicle, the damage to the Vehicle and ultimate transfer of ownership to another individual. Here, Plaintiff's adequate state remedy is the North Carolina tort of conversion. Under North Carolina law, "[t]he tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (quoting 89 C.J.S. Trover & Conversion, § 1). A cause of action for the tort of conversion consists of (1) ownership in the plaintiff and (2) a wrongful conversion by the defendant. *Lake Mary Ltd. P'ship. v. Johnston*, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001) (internal citations omitted). The party claiming conversion must prove that it retained lawful ownership in the chattel and a right to immediate possession. *See Patterson v. Allen*, 213 N.C. 632, 197 S.E.2d 168 (1938). Damages for conversion are measured by the fair market value of the chattel at the time of conversion plus interest. *Crouch v. Lowther Trucking Co.*, 262 N.C. 85, 87, 136 S.E.2d 246, 247 (1964). The nature of Plaintiff's claims and the relief sought indicate Plaintiff's adequate remedy would be a claim of conversion. Accordingly, this court recommends Plaintiff's claim under the North Carolina Constitution be dismissed.

15

## CONCLUSION

For the reasons stated herein, it is RECOMMENDED that Defendants' motions to dismiss [DE-43, -59 and -65] be allowed and that the claims asserted against the moving Defendants be dismissed.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties or the unrepresented parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, the 16th day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge