IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:14-CV-34-FL

| | | |
|---|---|---|
| THOMAS EVERETTE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WILLIAM ANTHONY BARNES in his | ) | |
| individual capacity; and DIANA LEE | ) | |
| DRAUGHN in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion for summary judgment against defendant William Anthony Barnes ("Barnes") (DE 127). Defendant Barnes has responded and plaintiff has replied. In this posture, the issues raised are ripe for ruling. For the following reasons, the court denies plaintiff's motion for summary judgment and provides notice to plaintiff that it is considering entry of summary judgment in favor of defendant Barnes and defendant Diana Lee Draughn ("Draughn") based upon the record presented.

## STATEMENT OF THE CASE

Plaintiff commenced this action pro se on March 4, 2014, and filed amended complaint on April 29, 2014, asserting state and federal constitutional violations based upon alleged deprivation of his personal property, a 2003 BMW ("the BMW"), without due process of law. As pertinent to the instant motion, plaintiff asserts that on September 26, 2012, defendant Barnes, then a police officer for the town of Princeville, North Carolina, purchased the BMW without plaintiff's permission from a wrecker company, which previously had towed the BMW after it was seized in

a traffic stop by the Tarboro Police Department. Plaintiff contends that defendant Draughn, then a notary public, assisted Barnes with creating a forged application of title. Plaintiff seeks compensatory and punitive damages.

On February 16, 2015, this court denied an earlier motion for summary judgment filed by plaintiff as untimely. In the same order, the court dismissed several former defendants in this action. The court dismissed former defendants Jesse Vann White ("White") and White's Wrecking Service, Inc. ("White's Wrecking") on the basis that they were not acting under color of state law. The court dismissed former defendant Princeville Police Department because that entity cannot be sued under North Carolina law. The court dismissed former defendant Town of Princeville and defendant Barnes in his official capacity because plaintiff failed to allege any basis for municipal liability. The court dismissed former defendant Donyell Weaver because plaintiff had failed to allege a claim of bystander liability. Finally, the court dismissed plaintiff's claims under the North Carolina Constitution because plaintiff had adequate remedies under state law.

Upon service, defendant Barnes filed a motion to dismiss for failure to state a claim, which the court denied by text order entered May 26, 2015, noting inter alia that the memorandum in support thereof was "fact dependent." (May 26, 2015, text order). Defendant Barnes filed an answer to the complaint on June 15, 2015. Case management order entered July 1, 2015, required discovery to be completed by December 1, 2015, with dispositive motions due January 4, 2015, later extended to March 2, 2016. On September 21, 2015, pro bono counsel entered an appearance for plaintiff.

Although defendant Draughn was served on July 25, 2014, and filed an answer pro se on August 18, 2014, the court struck defendant Draughn's answer on May 10, 2016, due to her failure

2

to update her mailing address.  On September 23, 2016, the court directed plaintiff in text order to file affidavit or otherwise, upon which the clerk may enter default as to defendant Draughn.

That same date, the court notified the parties of the court's intention to consider summary judgment of its own initiative, and directed the parties to file statements of material facts, appendix of evidence or other documentation.  In response to the court's order, plaintiff filed the instant motion for summary judgment against defendant Barnes, accompanied by a memorandum of law in support thereof and a statement of material facts.  In support of summary judgment, plaintiff relies upon the following evidence: 1) deposition of White; 2) deposition of defendant Barnes; 3) a July 26, 2012, letter from the North Carolina Division of Motor Vehicles ("DMV") to Antonio Denard McClendon (hereinafter the "July 26, 2012, DMV notice"); 4) a DMV form report of unclaimed motor vehicles completed by White (hereinafter "Unclaimed Vehicle Report"); 5) a bill of sale of the BMW from White to defendant Barnes; 6) criminal indictment of White; 7) a DMV Form MVR-4, Application for Duplicate Certificate of Title and Removal of Lien (hereinafter, the "MVR-4 form"); 8) a July 10, 2012, letter from DMV to White's Wrecking (hereinafter, the "July 10, 2012, DMV letter"); 9) criminal indictment of defendant Barnes; and 10) criminal jury verdict against defendant Barnes.  (See DE 130).  Plaintiff also relies upon materials filed in support of plaintiff's prior motion for summary judgment, including a certificate of title for the BMW issued to plaintiff on June 12, 2013.  (DE 78-4).

Defendant Barnes filed a response to the instant motion for summary judgment accompanied by a memorandum of law in opposition and statement of material facts.  In opposition to summary judgment, defendant Barnes directs the court to much of the same evidence relied upon by plaintiff, including the depositions of White and defendant Barnes, the Unclaimed Vehicle Report, and bill

3

of sale of the BMW from White to defendant Barnes. (See DE 136). Plaintiff then replied in support of summary judgment.

## STATEMENT OF FACTS

The undisputed facts may be summarized as follows. Plaintiff is the owner of the BMW according to a certificate of title issued by DMV on June 12, 2013. (DE 129 ¶ 1; DE 78-4). The Tarboro Police seized the BMW in connection with a traffic stop on July 4, 2012. (DE 129 ¶2). Brian Perry, plaintiff's stepson, was driving the BMW at the time of the traffic stop. (Id. ¶¶ 3-4). Tarboro Police contacted White, doing business as White's Wrecking, to tow the BMW. (Id. ¶ 5). Law enforcement agencies frequently contacted White to tow vehicles that had been seized by the police. (Id. ¶ 6). White towed the BMW to a lot at his business location. (Id. ¶ 7). On two or three prior occasions, White sold a vehicle he had towed at the request of law enforcement. (Id. ¶ 8).

On July 6, 2012, White completed the Unclaimed Vehicle Report form, which states that the BMW was left for storage on July 4, 2012, by Tarboro Police Department, because the "Police had stop check on people driving"; that a bill was left in the car identifying "Brian Perry"; and there was no key or license plate with the BMV. (DE 130-4). On July 10, 2012, the DMV sent White's Wrecking a letter acknowledging receipt of the Unclaimed Vehicle Report, providing information as follows regarding ownership of the vehicle:

> OWNER: ANTONIO DENARD MCCLENDON
> 100 SPRING RUN DR APT D5 100 SPRING RUN DR
> WINSTON SALEM NC 27106-6412
>
> cc: UNIVERSAL FINANCE INC - 106
> PO BOX 1087
> MOCKSVILLE NC 27028-1087
> Lien Date: 1/12/2009
>
> cc: BRIAN PERRY

4

300 WOODCROFT LN
TARBORO NC 27886
Lien Date: [blank]

(DE 130-8) (hereinafter, the "July 10, 2012, DMV letter").

On July 26, 2012, DMV sent a notice to McClendon, at the address listed in the July 10, 2012, DMV letter, stating that White's Wrecking had filed a "notice of intent to sell" the BMW to satisfy a $230 storage lien. (DE 130-3). The July 26, 2012, DMV notice states: "A reasonable attempt has been made to locate and notify the current owner and all recorded lienholders." (Id.). It states that a copy was sent to White's Wrecking and Universal Finance Inc., at the address listed in the July 10, 2012, DMV letter, again specifying lien date January 12, 2009. (Id.). It provides the owner with notice of the right to request a hearing within 10 days of receipt. (Id.).

At the time he towed the BMW, White knew that defendant Barnes was a Princeville Police Officer. (Id. ¶ 9). In or about August, 2012, defendant Barnes came to White's lot, driving his police vehicle and dressed in his police uniform, to ask about buying the BMW. (Id. ¶ 11). Defendant Barnes visited White again in uniform to discuss buying the BMW. (Id. ¶ 12). White agreed to sell Barnes the BMW for $3,800. (Id. ¶¶ 13-14).

White provided defendant Barnes with a copy of the July 26, 2012, DMV notice. (Id. ¶ 19). At the time of sale, White also provided defendant Barnes with paperwork identifying Brian Perry's name. (Id. ¶20). On September 26, 2012, defendant Barnes and White executed a Bill of Sale for sale of the BMW from White to Barnes for $3,800.00. The bill of sale states: "this vehicle is sold 'as is. . . .'" (DE 130-5).

Defendant Barnes knowingly purchased the BMW without a title. (DE 129 ¶25). Other than when he bought the BMW, when Mr. Barnes had purchased a motor vehicle, he received a title to

5

the vehicle at the time of purchase. (Id. ¶26). Defendant Barnes bought the BMW at the request of Denise Bryant. (Id. ¶27). Bryant wired the money to Barnes to pay for the BMW, and Barnes paid cash to White when he purchased the BMW. (Id. ¶28). When Barnes bought the BMW from White, Barnes did not obtain a key to operate the BMW. (Id. ¶31). White delivered the BMW to Barnes's residence on a rollback truck on September 26, 2012. (See DE 130-2 at 134)

Defendant Barnes then obtained and completed the DMV Form MVR-4, Application for Duplicate Certificate of Title and Removal of Lien. (Id. ¶ 34; see DE 130-7). The undisputed facts regarding defendant Barnes's use of the MVR-4 form are summarized as follows in plaintiff's statement of facts:

> Mr. Barnes understood that according to the records of the NorthCarolina Division of Motor Vehicles, Mr. McClendon was the registered owner of the BMW. The MVR-4 form requires the notarized signature of the registered owner for issuance of a duplicate title. Mr. Barnes contacted Diana Draughn and requested that Ms. Draughn notarize the MVR-4 form for the BMW. Mr. Barnes knew that Ms. Draughn was notary and had worked for the Town of Princeville as a clerk. Ms. Draughn notarized the MVR-4 form for the BMW as requested by Mr. Barnes. Ms. Draughn notarized the MVR-4 form for the BMW when there was no signature of the registered owner. Mr. Barnes knew that Ms. Draughn notarized the MVR-4 form for the BMW when there was no signature of the registered owner. Mr. Barnes submitted the notarized MVR-4 form for the BMW to the North Carolina Division of Motor Vehicles to obtain a duplicate title. An investigator for the North Carolina Division of Motor Vehicles, Mr. Ambrose, interviewed Mr. Barnes in connection with Mr. Barnes's purchase of the BMW.

(DE 129 ¶¶ 35-42). The signed MVR form is dated October 23, 2012. (DE 130-7).

On November 15, 2012, a warrant for arrest was issued for the arrest of defendant Barnes. The warrant states that Barnes forged the MVR form to retitle the BMW into his name, and that the vehicle was "the registered proper[t]y of Antonio D. McClendon." (DE 78-5). That same date, defendant Barnes was arrested, and DMV agents and Pitt County deputies seized the BMW. (See Barnes Dep. (DE 130-2) at 109, 111, 113, 133). Indictment filed March 4, 2013, in Edgecombe

6

County Superior Court charged defendant Barnes with three felony counts: 1) forging a title application, 2) obtaining property by false pretense, and 3) conspiracy to forge a title application. The indictment states for count one that defendant Barnes forged the MVR-4 form, where the "vehicle was lawfully registered to Antonio D. McClendon." (DE 130-9). It states defendant Barnes "knowingly submitted the application with the forged signature of Antonio D. McClendon, the lawful titled owner and supposed transferor of the motor vehicle on said MVR-4 application." (Id.).

For count two, the indictment states that between October 23, 2012, and November 5, 2012, "the defendant knowingly submitted a forged title application to NC DMV that the defendant knew contained the forged signature of Antonio D. McClendon and was notarized outside presence of the supposed transferor Antonio D. McClendon." (Id.). For count three, the indictment states that defendant Barnes "did conspire with Diana Lee Draughn to commit the felony of Forging a Title Application . . . by working with Diana Lee Draughn to . . . knowingly have an MVR-4 . . . notarized with the forged signature of Antonio D. McClendon." (Id.). The charges in count one and count two were submitted to a jury, and defendant Barnes was found guilty of both counts on October 8, 2013. (DE 130-10).

### DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the

7

moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); see United States v. Monsanto Co., 858 F.2d 160, 171 (4th Cir. 1988). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

Plaintiff asserts he is entitled to summary judgment against defendant Barnes based upon a claim under 42 U.S.C. § 1983, for deprivation of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. For the reasons stated below, plaintiff has not met the initial burden of demonstrating the absence of any genuine issue of material fact as to this claim. Indeed, the evidence submitted by plaintiff demonstrates that plaintiff has failed to establish at least one essential element of the claim, requiring summary judgment to be entered in favor of defendant Barnes and defendant Draughn.

The Fourteenth Amendment to the Constitution provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "[I]n order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'" Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 172 (4th Cir. 1988) (quoting Board of Regents v. Roth, 408 U.S. 564 (1972) and Daniels v. Williams, 474 U.S. 327 (1986)). Then, if plaintiff establishes "there has "been a 'deprivation' by 'state action,'" the court must next address the "question of what process is required and whether any provided could be adequate in the particular factual context." Id.

With respect to the first element, "[t]he Fourteenth Amendment does not grant property interests; rather, it protects those interests, derived from an independent source, from deprivation by the state without due process." Bannum, Inc. v. Town of Ashland, 922 F.2d 197, 200 (4th Cir. 1990) "The nature and extent of a property interest is determined by 'existing rules or

9

understandings that stem from an independent source such as state law.'" Id. (quoting Roth, 408 U.S. at 577). To have a property interest, a person "must have more than a unilateral expectation of it." Roth, 408 U.S. at 577. "He must, instead, have a legitimate claim of entitlement to it." Id. "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." Id.

Here, although it is undisputed that plaintiff "is the owner" of the BMW (DE 129 ¶1), plaintiff has not produced any evidence showing that he <u>was</u> the owner of the BMW at the time defendant Barnes was in possession of it. To the contrary, multiple government documents in the record state unequivocally that the owner of the BMW in 2012 was Antonio Denard McClendon ("McClendon"). (See, e.g., DE 130-3; 130-8; 130-9; 78-5; 78-6). In addition, the only evidence plaintiff cites in support of the proposition that he is the owner of the BMW is a certificate of title issued on June 12, 2013. (DE 78-4). Plaintiff cites no evidence showing plaintiff's ownership interest in the BMW prior to June 12, 2013. Therefore, plaintiff fails to meet his burden of establishing an absence of genuine issue of fact on the first element of his claim, and summary judgment in his favor must be denied on this basis.

In addition, based on the evidence of record, the court provides notice to plaintiff, pursuant to Federal Rule of Civil Procedure 56(f), that the court is considering summary judgment on its own for defendant Barnes and defendant Draughn, on the basis that there is no genuine dispute that the BMW was owned by McClendon at the time of the alleged deprivation by Barnes and assistance thereof by Draughn. The evidence presented by plaintiff does not permit a reasonable inference that plaintiff had any ownership interest in the BMW at the time of the alleged deprivation, between September 26, 2012, and November 15, 2012.

For example, while plaintiff mentions in his statement of facts that Brian Perry, plaintiff's stepson, was driving the BMW at the time of the traffic stop on July 4, 2012, (DE 129 ¶¶ 3, 4), such assertion does not establish an ownership interest by plaintiff. No evidence is proffered which would establish even that Perry had any property interest in the BMW, much less one attributable to or derived from plaintiff. Accordingly, the court will allow plaintiff 21 days from the date of this order to respond to this court's notice that it is considering granting summary judgment for defendants Barnes and Draughn on this basis.[1]

The court also provides notice to plaintiff that it is considering granting summary judgment for defendants Barnes and Draughn on an additional independent basis. In particular, even assuming that plaintiff had some property interest in the BMW in 2012, the evidence in the record establishes that plaintiff received all the process he was due prior to possession of the BMW by defendant Barnes. "A procedural due process violation arises not upon the occurrence of a deprivation but rather the failure of due process in connection with the deprivation." Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 149 (4th Cir. 2014) (quotations omitted). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Id. "Rather than a meticulous examination of the minutiae of the state's procedural rubric, 'procedural due process is simply a

---

[1] In its February 26, 2015, order, the court noted that plaintiff had asserted claims arising under the North Carolina constitution, but that such claims must be dismissed because plaintiff has an adequate remedy under state law, particularly the tort of conversion. While this ruling applied directly to defendants moving for dismissal at that time, not including defendants Draughn and Barnes, the reasoning applies equally to any such state constitutional claims that plaintiff may wish to pursue against defendants Draughn and Barnes. Accordingly, the court also provides notice to plaintiff that it is considering summary judgment in favor of Draughn and Barnes on plaintiff's state constitutional claims on the same basis described in the court's February 26, 2015, order.

11

guarantee' that there is notice and an opportunity to be heard." Id. (quoting Mora v. City of Gaithersburg, Md., 519 F.3d 216, 230 (4th Cir.2008)).

Here, it is undisputed that DMV sent its July 26, 2012, notice, providing notice of an intent to sell to satisfy storage lien, and opportunity to request hearing thereon, to the registered owner of the vehicle at the time, McClendon. (DE 130-3). Assuming plaintiff had a property right in possession of the BMW, plaintiff has provided no basis in the law that any additional notice or opportunity for hearing is required by the constitution, before being deprived of such property right by defendants. In the context of a vehicle that has been seized pursuant to a traffic stop and delivered by police to a wrecking service for storage, where the DMV has provided notice to the registered owner of the vehicle and lienholders of intent to sell for storage lien, plaintiff has not established that any further notice or hearing is required to be given to plaintiff, an individual who is not the registered owner of the vehicle or a lienholder, before plaintiff can be deprived of possession of the vehicle. Cf. Snider, 739 F.3d at 146-47 (holding that mailing of "summonses to the addresses registered in connection with the recorded vehicles" was sufficient due process for transmission of speeding citation; noting "[i]t is difficult to imagine a more reasonable attempt at effectuating actual notice . . . than the use of registration information collected by the state's transportation agency").

In sum, plaintiff received all the notice and opportunity for hearing that was due, in the context of his asserted property interest in this case, before being deprived of possession of the BMW by defendants Barnes and Draughn. Accordingly, the court will allow plaintiff 21 days from the date of this order to respond to this court's notice that it is considering granting summary judgment for defendants Barnes and Draughn on this basis.

12

Finally, the court provides notice to plaintiff that it is considering granting summary judgment for defendants Barnes and Draughn on the issue of damages. Plaintiff has not presented any evidence of damages. In particular, plaintiff has not presented any evidence regarding the nature or extent of damages flowing from Barnes's possession of the BMW between September 26, 2012, and November 15, 2012. Cf. Carey v. Piphus, 435 U.S. 247, 263–64 (1978) (holding that a constitutional violation in and of itself only entitles a plaintiff to nominal damages absent proof of actual injury in a § 1983 suit); Price v. City of Charlotte, 93 F.3d 1241, 1256 (4th Cir.1996) (reversing compensatory damages award in § 1983 suit and awarding nominal damages where plaintiffs' evidence consisted solely of conclusory statements); Hetzel v. County of Prince William, 89 F.3d 169, 171 (4th Cir.1996) (reversing and remanding excessive compensatory damages award in § 1983 action where plaintiff presented no evidence to corroborate the existence of specific harms). Accordingly, the court will allow plaintiff 21 days from the date of this order to respond to this court's notice that it is considering granting summary judgment on the issue of damages for defendants Barnes and Draughn on this basis.

## CONCLUSION

Based on the foregoing, the court DENIES plaintiff's motion for summary judgment against defendant Barnes (DE 127). In addition, the court GIVES NOTICE to plaintiff that it is considering entry of summary judgment in favor of defendant Barnes and defendant Draughn for the reasons stated herein. Plaintiff may file a response to the court's notice within **21 days** of the date of this order. In the event plaintiff files a response, defendant may file a reply thereto, if any, within **7 days** of the date of plaintiff's response. In the event plaintiff files no response, the court DIRECTS the

clerk to enter summary judgment in favor of defendant Barnes and defendant Draughn on all claims, on the basis of this order, and thereupon to close this case.

    SO ORDERED, this the 28th day of February, 2017.

                                        LOUISE W. FLANAGAN
                                        United States District Judge