IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:14-CV-34-FL

| | |
|---|---|
| THOMAS EVERETTE, JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM ANTHONY BARNES in his )<br>individual capacity; and DIANA LEE )<br>DRAUGHN in her individual capacity, )<br>)<br>Defendants. ) | ORDER |

This matter is before the court on its consideration of summary judgment in favor of defendants[1] based upon the record presented. Plaintiff has responded to the court's order identifying grounds for summary judgment (DE 139). Also pending is plaintiff's motion for entry of default against defendant Diana Lee Draughn ("Draughn") (DE 145). In this posture the issues raised are ripe for ruling. For the following reasons, the court grants summary judgment in favor of defendants, and denies as moot plaintiff's motion for entry of default.

**STATEMENT OF THE CASE**

Plaintiff commenced this action pro se on March 4, 2014, and filed amended complaint on April 29, 2014, asserting state and federal constitutional violations based upon alleged deprivation of his personal property, a 2003 BMW ("the BMW"), without due process of law. As pertinent to the instant motion, plaintiff asserts that on September 26, 2012, defendant William Anthony Barnes

---

[1] The court has listed in the caption of this order only those defendants who have not been terminated by prior order. Defendants William Anthony Barnes and Diana Lee Draughn herein are referred to collectively as "defendants."

("Barnes"), then a police officer for the town of Princeville, North Carolina, purchased the BMW without plaintiff's permission from a wrecker company, which previously had towed the BMW after it was seized in a traffic stop by the Tarboro Police Department. Plaintiff contends that defendant Draughn, then a notary public, assisted Barnes with creating a forged application of title. Plaintiff seeks compensatory and punitive damages.

On February 16, 2015, this court denied a motion for summary judgment filed by plaintiff as untimely. In the same order, the court dismissed several former defendants in this action. The court dismissed former defendants Jesse Vann White ("White") and White's Wrecking Service, Inc. ("White's Wrecking") on the basis that they were not acting under color of state law. The court dismissed former defendant Princeville Police Department because that entity cannot be sued under North Carolina law. The court dismissed former defendant Town of Princeville and defendant Barnes in his official capacity because plaintiff failed to allege any basis for municipal liability. The court dismissed former defendant Donyell Weaver because plaintiff had failed to allege a claim of bystander liability. Finally, the court dismissed plaintiff's claims under the North Carolina Constitution because plaintiff had adequate remedies under state law.

Upon service, defendant Barnes filed a motion to dismiss for failure to state a claim, which the court denied by text order entered May 26, 2015, noting inter alia that the memorandum in support thereof was "fact dependent." Defendant Barnes filed an answer to the complaint, and case management order entered July 1, 2015, requiring discovery to be completed by December 1, 2015, and dispositive motions filed by January 4, 2015, later extended to March 2, 2016. On September 21, 2015, pro bono counsel entered an appearance for plaintiff.

Although defendant Draughn was served on July 25, 2014, and filed an answer pro se on August 18, 2014, the court struck defendant Draughn's answer on May 10, 2016, due to her failure to update her mailing address. On September 23, 2016, the court directed plaintiff in text order to file affidavit or otherwise upon which the clerk may enter default as to defendant Draughn.

That same date, the court notified the parties of the court's intention to consider summary judgment of its own initiative, and directed the parties to file statements of material facts, appendix of evidence or other documentation. In response to the court's order, plaintiff filed a motion for summary judgment against defendant Barnes, accompanied by a memorandum of law in support thereof and a statement of material facts. In support of summary judgment, plaintiff relied upon the following evidence: 1) deposition of White; 2) deposition of defendant Barnes; 3) a July 26, 2012, letter from the North Carolina Division of Motor Vehicles ("DMV") to Antonio Denard McClendon (hereinafter the "July 26, 2012, DMV notice"); 4) a DMV form report of unclaimed motor vehicles completed by White (hereinafter "Unclaimed Vehicle Report"); 5) a bill of sale of the BMW from White to defendant Barnes; 6) criminal indictment of White; 7) a DMV Form MVR-4, Application for Duplicate Certificate of Title and Removal of Lien (hereinafter, the "MVR-4 form"); 8) a July 10, 2012, letter from DMV to White's Wrecking (hereinafter, the "July 10, 2012, DMV letter"); 9) criminal indictment of defendant Barnes; and 10) criminal jury verdict against defendant Barnes. (See DE 130). Plaintiff also relied upon materials filed in support of plaintiff's prior motion for summary judgment, including a certificate of title for the BMW issued to plaintiff on June 12, 2013. (DE 78-4).

Defendant Barnes filed a response to the motion for summary judgment accompanied by a memorandum of law in opposition and statement of material facts. In opposition to summary

3

judgment, defendant Barnes directed the court to much of the same evidence relied upon by plaintiff, including the depositions of White and defendant Barnes, the Unclaimed Vehicle Report, and bill of sale of the BMW from White to defendant Barnes. (See DE 136). Plaintiff then replied in support of summary judgment.

On February 28, 2017, this court denied plaintiff's motion for summary judgment. In addition, the court gave notice to plaintiff that it was considering entry of summary judgment in favor of defendant Barnes and defendant Draughn for the reasons stated in the court's order. The court gave plaintiff an opportunity to file a response to the order. Plaintiff filed a response to the court's order on April 6, 2017. In his response, plaintiff relies upon his verified complaint, as well as a new declaration in support of his claims, accompanied by exhibits, including estimates for repair and sale of the BMW, photographs of parts of the BMW, and a state court document from a criminal case against defendant White.

That same date, plaintiff also filed a motion for entry of default as to defendant Draughn. The court has held in abeyance consideration of the motion for entry of default until the court has addressed the issues raised in response to the court's order on summary judgment.

## STATEMENT OF FACTS

The undisputed facts may be summarized as follows. Plaintiff is the owner of the BMW according to a certificate of title issued by DMV on June 12, 2013. (DE 129 ¶ 1; DE 78-4). Plaintiff purchased the BMW in October 2010 in Charlotte for $25,500.00, and has had an ownership interest in the BMW from that date to present. (DE 146-1 ¶1).

The Tarboro Police seized the BMW in connection with a traffic stop on July 4, 2012. (DE 129 ¶2). Brian Perry, plaintiff's stepson, was driving the BMW at the time of the traffic stop. (Id. ¶¶ 3-4). The BMW was in good working condition at the time of the traffic stop.

Tarboro Police contacted White, doing business as White's Wrecking, to tow the BMW. (Id. ¶ 5). Law enforcement agencies frequently contacted White to tow vehicles that had been seized by the police. (Id. ¶ 6). White towed the BMW to a lot at his business location. (Id. ¶ 7). On two or three prior occasions, White sold a vehicle he had towed at the request of law enforcement. (Id. ¶ 8).

On July 6, 2012, White completed an "Unclaimed Vehicle Report" form, which states that the BMW was left for storage on July 4, 2012, by Tarboro Police Department, because the "Police had stop check on people driving"; that a bill was left in the car identifying "Brian Perry 300 Woodcroft Ln Tarboro NC 2788[]"; and there was no key or license plate with the BMV. (DE 130-4). On July 10, 2012, DMV sent White's Wrecking a letter acknowledging receipt of the Unclaimed Vehicle Report, stating that DMV "has sent notice to the below listed person(s) and lienholders (if applicable)":

> OWNER: ANTONIO DENARD MCCLENDON
> 100 SPRING RUN DR APT D5 100 SPRING RUN DR
> WINSTON SALEM NC 27106-6412
>
> cc: UNIVERSAL FINANCE INC - 106
> PO BOX 1087
> MOCKSVILLE NC 27028-1087
> Lien Date: 1/12/2009
>
> cc: BRIAN PERRY
> 300 WOODCROFT LN
> TARBORO NC 27886
> Lien Date: [blank]

(DE 130-8).

On July 26, 2012, DMV sent a notice to McClendon, at the address listed in the July 10, 2012, DMV letter, stating as follows:

> WHITE'S WRECKER SERVICE & REPAIRS, 1816 SUNSET AVE EXT, TARBORO, NC 27886, has filed a notice of intent to sell the 2003 BMW, WBAGN63493DR09415 to satisfy a mechanic's and/or storage lien. The amount of the lien asserted is $230 [***for repairs, towing and storage***].
>
> The lien amount asserted herein may not include any additional storage fees currently accruing during the pendency of this process.
>
> If the lien: $230 is invalid or if you wish to question the validity of the lien, you have the right to a judicial hearing to determine the validity thereof, provided you notify this Division by completing the request for judicial hearing appearing at the bottom of this page and returning this letter to the North Carolina Division of Motor Vehicles, 3132 Mail Service Center, Raleigh NC 27699-3132 by registered mail or certified mail, return receipt requested, within 10 days.
>
> Your failure to notify the Division within ten (10) days from the date you received this letter will be considered a waiver of your right to a hearing prior to the sale of this vehicle. If you indicate a hearing is desired, it will be the responsibility of the lienor, WHITE'S WRECKER SERVICE & REPAIRS, 1816 SUNSET AVE EXT, TARBORO, NC 27886 to initiate the proper action in a court of competent jurisdiction.
>
> NOTICE: A reasonable attempt has been made to locate and notify the current owner and all recorded lienholders. Full disclosure of all liens is not guaranteed.

(DE 130-3). This July 26, 2012, notice states that a copy of the notice was sent to White's Wrecking and Universal Finance Inc. (Id.).

At the time he towed the BMW, White knew that defendant Barnes was a Princeville Police Officer. (Id. ¶ 9). In or about August, 2012, defendant Barnes came to White's lot, driving his police vehicle and dressed in his police uniform, to ask about buying the BMW. (Id. ¶ 11). Defendant Barnes visited White again in uniform to discuss buying the BMW. (Id. ¶ 12). White agreed to sell Barnes the BMW for $3,800. (Id. ¶¶ 13-14).

6

White provided defendant Barnes with a copy of the July 26, 2012, DMV notice. (Id. ¶ 19). At the time of sale, White also provided defendant Barnes with paperwork identifying Brian Perry's name. (Id. ¶20). On September 26, 2012, defendant Barnes and White executed a Bill of Sale for sale of the BMW from White to Barnes for $3,800.00. The bill of sale states: "this vehicle is sold 'as is. . . .'" (DE 130-5).

Defendant Barnes knowingly purchased the BMW without a title. (DE 129 ¶25). Other than when he bought the BMW, when Mr. Barnes had purchased a motor vehicle, he received a title to the vehicle at the time of purchase. (Id. ¶26). Defendant Barnes bought the BMW at the request of Denise Bryant. (Id. ¶27). Bryant wired the money to Barnes to pay for the BMW, and Barnes paid cash to White when he purchased the BMW. (Id. ¶28). When Barnes bought the BMW from White, Barnes did not obtain a key to operate the BMW. (Id. ¶31). White delivered the BMW to Barnes's residence on a rollback truck on September 26, 2012. (See DE 130-2 at 134)

Defendant Barnes then obtained and completed the DMV Form MVR-4, Application for Duplicate Certificate of Title and Removal of Lien. (Id. ¶ 34; see DE 130-7). The undisputed facts regarding defendant Barnes's use of the MVR-4 form are summarized as follows in plaintiff's statement of facts:

> Mr. Barnes understood that according to the records of the NorthCarolina Division of Motor Vehicles, Mr. McClendon was the registered owner of the BMW. The MVR-4 form requires the notarized signature of the registered owner for issuance of a duplicate title. Mr. Barnes contacted Diana Draughn and requested that Ms. Draughn notarize the MVR-4 form for the BMW. Mr. Barnes knew that Ms. Draughn was [a] notary and had worked for the Town of Princeville as a clerk. Ms. Draughn notarized the MVR-4 form for the BMW as requested by Mr. Barnes. Ms. Draughn notarized the MVR-4 form for the BMW when there was no signature of the registered owner. Mr. Barnes knew that Ms. Draughn notarized the MVR-4 form for the BMW when there was no signature of the registered owner. Mr. Barnes submitted the notarized MVR-4 form for the BMW to the North Carolina Division of Motor Vehicles to obtain a duplicate title. An investigator for the North Carolina

7

Division of Motor Vehicles, Mr. Ambrose, interviewed Mr. Barnes in connection with Mr. Barnes's purchase of the BMW.

(DE 129 ¶¶ 35-42). The signed MVR form is dated October 23, 2012. (DE 130-7).

On November 15, 2012, a warrant for arrest was issued for the arrest of defendant Barnes. The warrant states that Barnes forged the MVR form to retitle the BMW into his name, and that the vehicle was "the registered proper[t]y of Antonio D. McClendon." (DE 78-5). That same date, defendant Barnes was arrested, and DMV agents and Pitt County deputies seized the BMW. (See Barnes Dep. (DE 130-2) at 26, 109, 111, 113, 133-34).

Indictment filed March 4, 2013, in Edgecombe County Superior Court charged defendant Barnes with three felony counts: 1) forging a title application, 2) obtaining property by false pretense, and 3) conspiracy to forge a title application. The indictment states for count one that defendant Barnes forged the MVR-4 form, where the "vehicle was lawfully registered to Antonio D. McClendon." (DE 130-9). It states defendant Barnes "knowingly submitted the application with the forged signature of Antonio D. McClendon, the lawful titled owner and supposed transferor of the motor vehicle on said MVR-4 application." (Id.).

For count two, the indictment states that between October 23, 2012, and November 5, 2012, "the defendant knowingly submitted a forged title application to NC DMV that the defendant knew contained the forged signature of Antonio D. McClendon and was notarized outside presence of the supposed transferor Antonio D. McClendon." (Id.). For count three, the indictment states that defendant Barnes "did conspire with Diana Lee Draughn to commit the felony of Forging a Title Application . . . by working with Diana Lee Draughn to . . . knowingly have an MVR-4 . . . notarized with the forged signature of Antonio D. McClendon." (Id.). The charges in count one and count

8

two were submitted to a jury, and defendant Barnes was found guilty of both counts on October 8, 2013. (DE 130-10).

Sometime after it was seized by the Tarborro Police on July 4, 2012, the BMW's engine was damaged by foreign materials. (DE 146-1 ¶ 2). The estimated cost of repair of the damage is $6,868.35. (Id.). The estimated sale value of the BMW at present is $3,904.00. (Id. ¶ 3).

## DISCUSSION

A.     Standard of Review

"After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quotations omitted). In opposing summary judgment the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id.

at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [fact finder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted); see Matsushita, 475 U.S. at 587 (noting that court must evaluate whether "the factual context renders respondents' claim implausible").  Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.  Id. at 489-90.

B.     Analysis

Plaintiff asserts he is entitled to judgment against defendants based upon a claim under 42 U.S.C. § 1983, for deprivation of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.  For the reasons stated below, plaintiff has failed to

establish an essential element of the claim, requiring summary judgment to be entered in favor of defendants.[2]

The Fourteenth Amendment to the Constitution provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "[I]n order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state action.'" Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 172 (4th Cir. 1988) (quoting Board of Regents v. Roth, 408 U.S. 564 (1972) and Daniels v. Williams, 474 U.S. 327 (1986)). Then, if plaintiff establishes "there has "been a 'deprivation' by 'state action,'" the court must next address the "question of what process is required and whether any provided could be adequate in the particular factual context." Id.

With respect to the first element, "[t]he Fourteenth Amendment does not grant property interests; rather, it protects those interests, derived from an independent source, from deprivation by the state without due process." Bannum, Inc. v. Town of Ashland, 922 F.2d 197, 200 (4th Cir. 1990) "The nature and extent of a property interest is determined by 'existing rules or understandings that stem from an independent source such as state law.'" Id. (quoting Roth, 408 U.S. at 577). To have a property interest, a person "must have more than a unilateral expectation of

---

[2] In its February 26, 2015, order, the court noted that plaintiff had asserted claims arising under the North Carolina constitution, but that such claims must be dismissed because plaintiff has an adequate remedy under state law, particularly the tort of conversion. (DE 87 at 7). While this ruling applied directly to defendants moving for dismissal at that time, not including defendants Draughn and Barnes, the reasoning applies equally to any such state constitutional claims that plaintiff may wish to pursue against defendants Draughn and Barnes. Accordingly, the court grants summary judgment in favor of defendants on plaintiff's state constitutional claims on the same basis described in the court's February 26, 2015, order.

it." Roth, 408 U.S. at 577. "He must, instead, have a legitimate claim of entitlement to it." Id. "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." Id.

Here, plaintiff purchased the BMW in October 2010 for $25,500.00, and has had an ownership interest in the BMW from that date to present. (DE 146-1 ¶1). That ownership interest is not without some qualification, however. Multiple government documents in the record state unequivocally that the owner of the BMW in 2012 was Antonio Denard McClendon ("McClendon"). (See, e.g., DE 130-3; 130-8; 130-9; 78-5; 78-6). Plaintiff did not obtain a certificate of title to the vehicle until June 12, 2013. (DE 78-4).

While evidence of plaintiff's ownership interest is limited, plaintiff has established at least a genuine issue of material fact "that he has been 'deprived' of [a] protected interest" in his ownership of the BMW "by some form of 'state action.'" Stone, 855 F.2d at 172.[3] Accordingly, the court turns next to examine the "question of what process is required" under the circumstances, "and whether any provided could be adequate in the particular factual context." Id.

The Due Process Clause generally requires "some kind of notice and some kind of hearing" before a state deprives a person of property. Zinermon v. Burch, 494 U.S. 113, 127 (1990) (quotations omitted). "Proper notice . . . must be reasonably calculated to convey information concerning a deprivation." Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 146 (4th Cir. 2014). "Notice must not be a mere gesture, but rather an effort reasonably calculated to effect actual notice," although "[a]ctual notice is not necessary." Id. "[N]otice satisfies due process

---

[3] For purposes of the instant order, the court presumes, without deciding, that plaintiff has established a genuine issue of material fact as to whether conduct by defendants Barnes and Draughn constituted "state action," in part due to evidence of Barnes's position at the time with the Princeville Police Department and defendant Draughn's actions in concert with Barnes. (See, e.g., DE 130-2 at 10, 11, 69-71, 114).

12

where it either 1) 'is in itself reasonably certain to inform those affected' or 2) 'where conditions do not reasonably permit such notice, the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.'" Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950)).

"Where the identities of interested parties are known, 'a serious effort must be made to inform them personally of the action, at least by ordinary mail to the record addresses.'" Id. (quoting Mullane, 339 U.S. at 316). "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party if its name and address are reasonably ascertainable." Id. (quotations omitted). In this manner, in Snider, the Fourth Circuit held that mailing of "summonses to the addresses registered in connection with the recorded vehicles" was sufficient due process for transmission of a speeding citation, noting "[i]t is difficult to imagine a more reasonable attempt at effectuating actual notice . . . than the use of registration information collected by the state's transportation agency." 739 F.3d at 146-47.

In this case, the state provided sufficient notice and opportunity for hearing prior to sale of the BMW. It is undisputed that DMV sent its July 26, 2012, notice, providing notice of an intent to sell to satisfy storage lien and opportunity to request hearing thereon, to the registered owner of the vehicle at the time, McClendon. (DE 130-3). In addition, it is undisputed that plaintiff "did not submit the paperwork to [DMV] to obtain the title to the BMW until June 2013," several months after the BMW was seized from Barnes by DMV. (DE 146-1 ¶ 1; Barnes Dep. (DE 130-2) at 133-34). In light of these facts and the circumstances surrounding the seizure of the vehicle, in July

2012, DMV reasonably sent notice in accordance with the registration information on the vehicle, to the registered owner, McClendon.

In the context of a vehicle that has been seized pursuant to a traffic stop and delivered by police to a wrecking service for storage, where the DMV provided notice to the registered owner of the vehicle and lienholders, no further notice or opportunity for hearing was required to be given to an individual who is not the registered owner of the vehicle or a lienholder, before the individual can be deprived of possession of the vehicle. By using registration records, the notice was "sent to what was likely to be the most current address for the registered owner." Snider, 739 F.3d at 147. Thus, plaintiff received all the notice and opportunity for hearing that was due, before being deprived of his ownership interest in the BMW.

Plaintiff suggests, nonetheless, that the DMV notice was not sufficient to satisfy his due process rights because DMV had information it could have used to provide plaintiff with actual notice of the impending sale of his BMW. In particular, plaintiff points out that White submitted a "Report of Unclaimed Vehicle" to DMV that identified "Brian Perry" and provided his address. (DE 130-4). Plaintiff argues that if DMV had notified Perry at the address listed in the "Report of Unclaimed Motor Vehicles," then plaintiff "would have had a chance to learn about the potential sale and be heard." (DE 146 at 4).

Plaintiff's argument misses the mark, however, for several reasons. First, where DMV was able to obtain a match on the registered owner of the vehicle, it is not reasonable to expect DMV to send additional notice to other individuals whose relationship with the car was both not specified and not memorialized in state vehicle records. See Snider, 739 F.3d at 147 (noting Maryland motor vehicle laws required residents to register vehicles with state agency); cf. N.C. Gen. Stat. § 20-50(a)

(stating that "[a] vehicle intended to be operated upon any highway of this State must be registered with the [DMV] . . . and the owner of the vehicle must comply with [vehicle registration requirements] before operating the vehicle").

In addition, the handwritten reference to "Brian Perry" in White's "Report of Unclaimed Motor Vehicles" does not suggest that Brian Perry was an owner of the vehicle, much less that plaintiff was an owner. (See DE 130-4). To the contrary, at the prompt "Any evidence in the car to assist in locating owner or in tracing," White wrote first "N/A." " (Id.) (emphasis added). Only thereafter White noted "Just one bill left in car Brian Perry 300 Woodcroft Ln Tarboro NC 2788[]." (Id.). Moreover, there is no evidence in the record that DMV had any other reason to send additional notices to the registered owner, or supplemental notices to other individuals as potential owners of the vehicle, prior to the sale of the BMW in September 2012. See Snider, 739 F.3d at 147 (suggesting that additional methods of notice to the registered owner may be required where the state learns that initial notice was returned as undeliverable).

Plaintiff also suggests that sending notice to Brian Perry would have given plaintiff "a chance to learn about the potential sale and be heard," without imposing any "greater administrative burden" on DMV. (DE 146 at 4, 6). As an initial matter, however, "a chance to learn" of the sale is not evidence showing the "probable value, if any, of" the additional notice plaintiff suggests. Snider, 739 F.3d at 149 (quotations omitted). Indeed, DMV's July 10, 2012, letter suggests that it did in fact send notice to Brian Perry, but plaintiff does not allege having been informed of the same. (See DE 130-8 (stating "[t]he [DMV] has sent notice to the below listed person(s) and lienholders (if applicable)," and listing "BRIAN PERRY 300 WOODCROFT LN TARBORO NC 27886")).

15

In any event, it is not plausible to infer that no additional administrative burden would be required to decipher and act upon a handwritten reference to "Brian Perry" on White's "Report of Unclaimed Motor Vehicles," where the DMV already had access in its records to standard registration information on the vehicle. At bottom, plaintiff should not be entitled to recover for a lack of notice of the sale of his BMW, where plaintiff himself failed to duly register the BMW upon purchase in accordance with the motor vehicle laws of North Carolina.

Finally, plaintiff argues that White's "illegal actions infected the procedures" normally required by DMV for storage and sale of unclaimed vehicles, thus permitting plaintiff to recover for lack of notice. Plaintiff points out that White filed a "Report of Unclaimed Motor Vehicles" too early, without waiting for the ten day claim period to pass, and White filed a "notice of storage" too late, not within the five day period required, in violation of N.C. Gen. Stat. § 20-77(d). Indeed, White was convicted of a misdemeanor offense for this violation. (See DE 130-6; 146-2).

Plaintiff's argument is unavailing for two reasons. First, it is not plausible that White's mis-timing of his reports to DMV had any material impact on whether plaintiff received notice from DMV, where DMV sent the notice of sale in any event to the registered owner, McClendon, on July 26, 2012. (See DE 130-3). Second, if White's unilateral and unlawful conduct somehow contributed to the deprivation of plaintiff's property, in conjunction with any unlawful conduct by defendants, "the state [could not] foresee, and thus [could not] avert through implementation of prescriptive procedures, the deprivation in issue." Fields v. Durham, 909 F.2d 94, 97 (4th Cir. 1990). In such circumstances, "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." Id. (quoting Zinermon, 494 U.S. at 128).

In sum, plaintiff has failed to show a genuine issue of material fact as to an essential element of his claim. Therefore, summary judgment in favor of defendants is required.[4]

## CONCLUSION

Based on the foregoing, the court on its own initiative GRANTS summary judgment in favor of defendants. Plaintiff's motion for entry of default as to defendant Draughn (DE 145) accordingly is DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of June, 2017.

                                          LOUISE W. FLANAGAN
                                          United States District Judge

---

[4] Because summary judgment is required in favor of both defendants for the same reasons, plaintiff's motion for entry of default as to defendant Draughn is denied as moot. See Fed. R. Civ. P. 56(f)(1) (stating that the court may "grant summary judgment for a nonmovant"); U. S. for Use of Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1967) ("Where the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant").